In re Gregory Alan SHAW and Martha Hicks Shaw, Debtors.

No. 03–51516–7W.

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Dec. 5, 2003.

John A. Meadows, Winston–Salem, NC, for Debtors.

W. Joseph Burns, Winston–Salem, NC, pro se.

## MEMORANDUM OPINION

CATHARINE R. CARRUTHERS, Bankruptcy Judge.

This case came on before the Court, after due and proper notice, on November 24, 2003, for hearing upon the court's Motion to Dismiss the case pursuant to § 707(b) of the Bankruptcy Code. John Meadows appeared on behalf of the Debtors and Robyn C. Whitman appeared on behalf of the Bankruptcy Administrator. The Court, having considered the evidence presented and having heard the arguments of counsel, makes the following findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

### Background

The Debtors, Gregory and Martha Shaw, filed for Chapter 7 bankruptcy on May 27, 2003. The Debtors are a married couple in their early 50s with two grown children, ages 21 and 24. The Debtors assets include a house that they listed on

Schedule A with a value of $415,000.00, but testified that they believed it was actually worth less than $400,000.00. The Debtors listed personal property in the amount of $56,265.00.

The Debtors have been continuously employed for at least the past five years. The Debtors' 2001 Federal tax return shows adjusted gross income of $138,554.00, with an increase in 2002 to $157,024.00. At the time of the bankruptcy filing, Mr. Shaw worked for Shelco, Inc., where he has been employed for the past five years, and Mrs. Shaw worked for R.J. Reynolds Tobacco Company. On their bankruptcy schedules, Mrs. Shaw listed monthly income of $3,080.70 and Mr. Shaw listed income of $4,723.41 for a total combined monthly income, after taxes and other payroll deductions, in the amount of $7,804.11.

Mrs. Shaw has since lost her job, though she will receive severance pay at full salary until April 2004. Mrs. Shaw must now pay for health and dental insurance, which she estimated at $192.00 per month, such that her income should be adjusted down accordingly. Therefore, according to her pay stubs her monthly income is $2,763.89 per month.[1] Mrs. Shaw stated that she obtained many skills from her employment at R.J. Reynolds Tobacco Company and that she is also a licensed cosmetologist. She intends to seek new employment next month, and will continue to receive severance pay at full salary even if she obtains new employment prior to April. Mr. Shaw

recently received a raise, such that his income has increased to $5,126.08 per month after taxes. Therefore, the Debtors combined monthly income, after deductions for payroll taxes and health insurance, is currently $7,889.97.[2]

The Debtors listed net monthly expenses of $7,517.59. The breakdown is as follows:

| | |
|---|---|
| Home Mortgage | $3,349.28 |
| Electricity and heat | $ 200.00 |
| Cable | $ 40.00 |
| Telephone | $ 95.00 |
| Water | $ 16.00 |
| Internet | $ 29.95 |
| Trash service | $ 16.00 |
| Home maintenance | $ 30.00 |
| Food | $ 525.00 |
| Clothing | $ 75.00 |
| Laundry | $ 40.00 |
| Medical and dental | $ 75.00 |
| Transportation | $ 435.00 |
| Recreation, newspapers | $ 14.00 |
| Charitable contributions | $ 165.00 |
| Auto insurance | $ 227.00 |
| Life insurance | $ 41.36 |
| Property taxes | $ 50.00 |
| Auto payments | $ 944.00 |
| College expenses for daughter | $1,105.00 |
| Miscellaneous | $ 100.00 |
| TOTAL | $7,517.59 |

At the hearing on this matter, the Debtors testified as to some adjustments to their scheduled budget. First, the Debtors understated their automobile payments on their petition. The Debtors own a 2002 Oldsmobile Bravado with a payment of $598.00, a 2001 Oldsmobile Alero with a payment of $458.00 per month, and lease a 2000 Mitsubishi Montero for $349.00 per month for a total of $1,404.00 per month.[3]

1. This monthly figure is based on earnings in the amount of $1,818.50 less $454.24 in taxes paid 26 times a year. The court deducted $192.00 per month for health and dental insurance. Mrs. Shaw also has deductions from her paycheck for a 401(k) loan and a car loan that the court has included in her income.

2. The Debtors could have more disposable income if they adjusted their state and federal withholdings. For tax year 2002, they had a federal refund of $3,830.00 and a state refund of $2,279.00.

3. The Debtors also co-signed a note for their son's 2001 Honda Prelude, but testified that their son makes the monthly car payments.

Second, the Debtors monthly telephone expense is $220.00, including two cell phones and two lines for their home. Finally, the Debtors did take out a student loan for their daughter's college tuition, so their college expenses have dropped to $520.00 per month. Even with these changes, the Debtors' monthly budget appears to remain at approximately $7,500.00 per month.

The Debtors' financial problems have been ongoing for over ten years. Prior to filing for bankruptcy, the Debtors had amassed a substantial amount of both secured and unsecured debt consisting primarily of credit card debt. The Debtors have a first mortgage in the amount of $338,000.00 and a second mortgage in the amount of $60,329.00 on their home. The Debtors total secured debt, including three car loans and two mortgages is $469,074.50. The Debtors also owe $131,476.26 in unsecured credit card debt. The Debtors had at least fifteen credit card accounts including credit accounts with stores such as Dillards, Hecht's, JC Penney's, Sears, Belk and Home Depot.

Despite their consistent income during the last several years, the Debtors have been unable to make a dent in the repayment of their debts and have consistently spent more money than they were able to earn. The Debtors contend that they need a fresh start in a Chapter 7 so that they can retain their home and three vehicles.

### Discussion

 The court scheduled this matter to determine if dismissal was for substantial abuse under Bankruptcy Code Section 707(b), which provides as follows:

> After notice and a hearing, the court, on its own motion or on the motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

 The Debtors stipulate that their obligations are "primarily consumer debts" in that they are debts "incurred by an individual primarily for personal, family, or household purposes." 11 U.S.C. § 101(8). Congress, however, did not provide a definition for the term "substantial abuse." The Fourth Circuit has adopted a test for substantial abuse that requires that the court look at the "totality of circumstances." *In re Green,* 934 F.2d 568 (4th Cir.1991). Under the *Green* test, an important factor to be considered is whether the debtor has the ability to repay the debt, including consideration of the relation of the debtor's future income to his future necessary expenses. *Id.* at 572. The court must also examine (1) whether the debtor filed his bankruptcy petition because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect his true financial condition; (3) whether the debtor incurred cash advances and made consumer purchases in excess of his ability to repay; (4) whether the debtor's proposed family budget is excessive or unreasonable; and (5) whether the petition was filed in good faith. *In re Smurthwaite,* 149 B.R. 409, 411 (Bankr. N.D.W.Va.1992).

The facts in this case illustrate that the Debtors can repay a meaningful portion of their unsecured debt over a period of 36 months based upon their projected income and necessary future expenses. Conversely, if the debtors remain in chapter 7, this

case will be a no asset case and unsecured creditors will receive nothing. The Debtors' proposed family budget as listed on Schedule J in the amount of $6,312.52 is excessive and unreasonable. While their scheduled budget appears to leave no disposable income, the Debtors' overall expenses can be reduced significantly and still provide the Debtors with adequate food, clothing, shelter and other necessities of life. *See In re Engskow*, 247 B.R. 314 (Bankr.M.D.Fla.2000).

■ The court finds that the Debtors' proposed family budget is excessive and unreasonable within the context of a Chapter 7 bankruptcy. First, the Debtors' mortgage payment expense is clearly unwarranted. The Debtors purchased the home in 1993. At the hearing, the Debtors explained that they needed a large home so that there would be sufficient space for Mrs. Shaw's mother to live with them and yet not interrupt their children's lives. Mrs. Shaws' mother passed away in 1998. The Debtors currently pay $3,349.28 to maintain a home with approximately 3200 square feet as well as a finished basement. The Debtors' children are now grown, however, their 24–year–old son lives at home and contributes nothing to the monthly housing payment. If the Debtors wish to take advantage of the protections afforded by the Bankruptcy Code, they simply must obtain less expensive housing. The Debtors could easily reduce their monthly housing expense by $1,000.00 per month and still have over $2,000.00 per month available for housing.

■ In addition, the court finds that the vehicle lease payments of $349.00 per month and college expenses of $520.00 per month for the Debtors' daughter are not reasonable and necessary expenses under these circumstances. While supporting a daughter in college is an admirable goal, the Debtors propose to do so at the expense of their creditors. Therefore, the Debtors' budget can be further reduced by $869.00 per month.[4] Further reductions can be made by trimming the Debtors' telephone expenses for two home lines and two cell phones and by eliminating the ongoing expenses for the swimming pool. The court finds that the transportation cost, exclusive of car payments and insurance, is unreasonable and excessive. With just these adjustments alone, the Debtors could be able to contribute approximately $2,000.00 per month to a Chapter 13 plan. The Chapter 13 Trustee estimates a dividend of 29% over 36 months.

The Debtors admit that their bankruptcy was not the result of a sudden illness, calamity, disability, or unemployment. These Debtors were not forced into bankruptcy as the result of a tragic event. While the Debtors have experience some short period of unemployment, their road to financial distress was the result of lifestyle choices they made. Their debts have been accumulating for years. This *Green* factor weighs in favor of dismissal.

The Debtors admit they have incurred cash advances and consumer purchases beyond their ability to pay such debts. The Shaws have been living beyond their means for years. The Debtors made purchases in anticipation of future bonuses and were unable to payoff those purchases when bonuses were not received or were smaller than expected. For example, Mrs. Shaw testified that she purchased a bedroom suite less than two years ago for approximately $4,000.00 with the expectation that Mr. Shaw would get an anniver-

---

4. The daughter will graduate in May '04 and her lease, paid by the Debtors, will terminate in November '04.

sary bonus. Mr. Shaw did not receive that bonus. The Debtors also paid for maintenance and repairs on their home through cash advances on credit cards. Mrs. Shaw testified that for years, they managed to keep up with their bills only by relying on bonuses and income tax refunds to catch up payments, and by pushing out payments by consolidating debts or refinancing.

The Debtors contend that they have never incurred debt maliciously or with an intent not to pay, and that their enormous debt has accumulated over a period of years. The fact that the these debts accumulated over a long period of time makes it all the more difficult for the court to understand why the Debtors did not change their spending behavior years ago. According to the Debtors' testimony, they have been struggling to make payments on their debts for years, and yet continued to make expensive decisions, such as purchasing a 2002 Oldsmobile Bravado and a 2001 Oldsmobile Alero, and a $4,000.00 bedroom suite and contributing over $1,000.00 per month towards their daughter's college expenses. Thus, the Debtors have clearly been aware of their inability to pay their ever-increasing debt for years, and continued to incur cash advances and consumer purchases beyond their ability to pay.

■ This brings the court to the question of whether the Debtors filed the case in good faith. The Debtors have incurred over $130,000.00 in unsecured credit card debt. The Debtors have clearly stated that they are seeking the court to discharge this unsecured debt so they can use their income to make their vehicle and mortgage payments. Clearly the Debtors have been quite forthright and honest, however, the Debtors' desire to retain their $415,000.00 home and three vehicles, and maintain a lifestyle they cannot afford at the expense of their creditors weighs against a finding of good faith.

Finally, the court notes that the Debtors' schedules are reasonably accurate and the Debtors were credible at the hearing when questioned by counsel and the court. Therefore, the court will find that the errors in the schedules were not made with the intent to mislead any parties and therefore do not weigh in favor of dismissal.

In evaluating all of the *Green* factors and looking at the totality of the circumstances, the court must take into account that there is a presumption of granting the debtors the relief requested under Chapter 7. Even with this presumption, the court finds that this case should be dismissed for substantial abuse. The Debtors elected to file a Chapter 7 petition to maintain their present lifestyle. They have the ability to repay a substantial portion of the debt with their high income. The Debtors incurred cash advances and made consumer purchases far in excess of their ability to repay and their proposed family budget is both excessive and unreasonable given their current circumstances.

The court concludes that based upon the totality of the circumstances these debtors do not satisfy the criteria to be Chapter 7 debtors. To allow such would be a substantial abuse of the bankruptcy system and goals; and therefore, this Chapter 7 case should be dismissed under 11 U.S.C. § 707(b) of the Bankruptcy Code. The Court will delay entry of the Order for ten days to provide the Debtors with an opportunity to consider whether to convert this case to a case under Chapter 13 of the Bankruptcy Code.